## (May 18, 1966)

In the Matter of JOHN H. DONOHUE, Appellant, v. NEW YORK STATE POLICE, Respondent.— *Per Curiam.* Proceeding under article 78 of the CPLR to review a determination of the Superintendent of State Police which dismissed petitioner from his position as a State trooper upon finding him guilty of the charge of violating section 8.3 of article 8 of the Regulations of the New York State Police (see Executive Law, § 215, subd. 2) in failing to obey certain lawful orders of his troop commander. Petitioner contends that the genesis of the charges is to be found in his address at a largely attended public meeting of the employees' association of which he was a member, in which, according to his brief, he related "his personal .grievances with his Division, arising out of reprisals committed against him, because he had challenged promotional examinations" in the courts. Petitioner was quoted in a newspaper article as stating at the meeting and subsequently to a reporter that he had been subjected to "one year of continual discrimination and harassment", in that, among other things, when on duty he and his car had been repeatedly "checked", in attempts to find a "minor performance violation", and that he had been investigated to ascertain the source of the funds with which he paid for his house and to elicit information of "scandalous" or "promiscuous" activities on his part. Questioned by a superior as to the accuracy of the newspaper article, petitioner said that he had indeed been checked, as to location, by a commissioned officer as often as four times in one night and on two occasions another night and that he had been informed that inquiries had been made by troopers as to his finances and that three troopers had told him that they had been asked by superiors as to petitioner's consorting with women, drinking while on duty or otherwise misbehaving. Although then and thereafter directed by his troop commander, both formally and informally, to state the names of the commissioned officer and the troopers to whom he thus referred, petitioner refused to do so; the charge of disobeying these allegedly lawful orders followed; and upon his trial petitioner did not testify or otherwise disclose the information demanded. We find no basis, nor do petitioner's briefs cite any pertinent authority for petitioner's contention that his remarks were privileged. Equally unsupported are his claims that the charges were bottomed in bad faith; and that the determination was not grounded on substantial evidence. Assuming for the moment that evidence of the "discrimination" and "harassment" initially asserted by petitioner,- and of the "reprisals" asserted in his brief,

would have been relevant, in possible mitigation or for any other purpose, it may be noted, although in no way predicative of our decision, that no proof thereof was tendered; that petitioner chose not to testify; and that the simple and primary issue of his disobedience was proven and was not in any way disputed. In a necessarily paramilitary organization functioning for the protection of public safety, prompt obedience to lawful commands is vital. It was open for petitioner to obey his superior's order and then, or theretofore or thereafter, to invoke the grievance procedures available to him; and in choosing insubordination instead he not merely invited but rendered inevitable the disciplinary action taken. There is ample support in the record, as in reason, for the conclusion that the orders were lawful. If there was, indeed, oppressive, retaliatory and improper action on the part of one or more of petitioner's superiors, in one or more of the higher echelons of command, it was the clear duty of responsible authority to investigate it, in the public interest and for the present and future protection of petitioner and of every other trooper; and petitioner's obligation to co-operate by prompt and immediate obedience to the lawful commands addressed to him seems too clear to require discussion. Under all the circumstances, the Superintendent was warranted in finding that for obstructive disobedience of this nature, so closely involving the public interest and the essential discipline of the State Police organization, no punishment short of dismissal would be sufficient or appropriate; and we cannot, upon this record, find it so shocking or inordinate as to permit interference on our part. Determination confirmed, without costs. Gibson, P. J., Reynolds, Taylor and Aulisi, JJ., concur; Herlihy, J., concurs in part and dissents in part, in the following memorandum: The record establishes that the petitioner, John H. Donohue, did refuse to obey an order given him by his superior. Section 8.3 of article 8 of the Regulations of the New York State Police, the respondent herein, requires that all "lawful orders" from a superior be obeyed. There remains two issues. First, whether the order was lawful. Second, the reasonableness of the punishment. It should be noted that originally there was an additional charge of having acted "in a manner tending to bring discredit on the Division", said charge being based partly on his accusations and partly on his refusal to divulge names as ordered. The Superintendent for some undisclosed reason withdrew this charge. Upon that charge, the truth or falsity of the accusations would have been directly in issue. Although that charge was withdrawn, it is evident that the truth or falsity of the accusations was still treated as being the main issue, both the petitioner and the respondent offering testimony relating to it. The facts as set forth in the majority statement, and hereafter in this statement, show that this was not an order made in the ordinary course of police work, but rather was one directly involving personal relationship between the petitioner and the respondent, and therefore requires this court to examine all of the relevant circumstances, and particularly in regard to the matter of punishment. (Cf. *Matter of Loewy* v. *Binghamton Housing Auth.*, 4 A D 2d 581.) As in *Matter of Loewy (supra)*, it appears that there is involved in this case the extraneous matter of publicity adverse to the respondent. The majority have laid great emphasis on the paramilitary nature of the respondent, but a consideration of the order here involved shows clearly that it had no relation to "the protection of public safety". Further, it is common knowledge that officers and enlisted men in the military who disobey direct orders are often severely punished by loss of pay, demotion and other penalties, and are not necessarily dismissed from the military service. Whether the order in question is lawful depends not solely upon the authority of the superior giving the order but also the surrounding circumstances. It is

well established that mere technical violations of rules and regulations without wrongful intent are not sufficient to justify the dismissal of a civil servant. (*Matter of Ryan* v. *New York State Liq. Auth.*, 273 App. Div. 576, 581.) The petitioner found himself in difficulty if he did not obey the order, but violating a confidence if he did obey. The charge against the petitioner arose from his accusations that he was harassed by his superiors because he had instituted legal proceedings in regard to the respondent's procedure in the preparation and grading of promotional examinations. The petitioner was the president of his chapter and the delegate to the Civil Service Employees Association convention, which justified his presence there and explains the basic reason for his alleged remarks and which, regardless of the present charge, is the hub of the controversy. He was, in fact, speaking on behalf of all of the members of the State Police as their duly designated representative. The specifications, as part of the charge, alleged that as a result of the petitioner's failure to obey the order, it delayed, hindered and impeded the completion of the investigation. The hearing officer did not make such a necessary and required finding in fact or in law. Based on the present "fuzzy" record and giving the respondent the benefit of the doubt as to the reason for these charges, in balance, it appears that there was minimal substantial evidence to sustain the charges. As to the punishment imposed, it was disproportionate and grossly excessive. The petitioner's unblemished record as a member of the State Police and the evidence of good character, contrary to the hearing officer's unwarranted conclusion, were entitled to weight, particularly as to the severity of the punishment. A prisoner before the bar receives that consideration. The hearing officer further considered as to punishment the fact that the record, in his opinion, established that the accusations made by the petitioner had been conclusively proven false. The petitioner was not charged with accusations but with disobeying an order to supply the names of certain members of the State Police. In my opinion, the record does not finally establish either the truth or the falsity of the said accusations. The hearing officer further considered the question of notoriety but this was not the result of the failure to obey the order but once again, the accusations, and it would appear that the notoriety and its continuance resulted from the filing of charges. The extent to which the hearing officer considered these matters is best demonstrated when he stated that the violation had progressed from most serious to "flagrant", all of which leads to the inescapable conclusion that in the consideration of punishment, the recommendation of the hearing officer was not based on the violation of the order alone but upon the accusations which had been made by the petitioner while attending a Civil Service convention. Accordingly, it is my opinion that the punishment is excessive and disproportionate to an isolated instance of disobedience relating solely to the internal matters of respondent. It follows that I disagree with the majority statement that "obstructive disobedience * * * so closely involving the public interest and the essential discipline of the State police organization" justifies dismissal. It is indeed coincidental that a matter involving such a "flagrant" violation should result in the "individual appraisal" of the Superintendent being dated the same as that of the hearing officer's decision. In peculiar circumstances, such as here, with a background of personalities, it is the obligation of the court to go behind the legalistic barrier and determine whether justice and equity between the parties are in balance. The petitioner's record in the State Police was outstanding, his good character is beyond dispute, the background of the charge is unusual and not related to ordinary police work and it can be readily inferred that extraneous matters were considered when imposing the severest form of punishment (cf. *Matter of*

*Matuljak* v. *Cornelius*, 19 A D 2d 921; see *Matter of Fischer* v. *Kelly*, 17 N Y 2d 521; *Matter of Mitthauer* v. *Patterson*, 8 A D 2d 953, affd. 8 N Y 2d 37, 43; *Matter of Kane* v. *New York City Tr. Auth.*, 22 A D 2d 947; *Matter of Loewy* v. *Binghamton Housing Auth.*, 4 A D 2d 581, 588, *supra*). Accordingly, as to the punishment I would annul and remit for a determination not inconsistent with this statement.